[No. 20618.   In Bank. — June 10, 1890.]

## THE PEOPLE, RESPONDENT, *v.* JOHN SANSOME, APPELLANT.

84 449
88 117

84 449
94 90

84 449
110 43

84 449
116 687

84 449
d143 600

CRIMINAL LAW — PRIOR CONVICTION — READING CONFESSION TO JURY. — Where an indictment or information for felony charges a prior conviction, which the defendant has confessed, it is clearly erroneous to require the whole indictment, including the charge and confession of prior conviction, to be read to the jury.

ID. — WAIVER OF ERROR — PROOF OF PARDON. — Such error is not waived by proof on the part of the defendant that he was pardoned for the offense, the prior conviction of which had been charged against him in the indictment.

ID. — CURING ERROR — INSTRUCTION. — Nor is such error cured by an instruction to the jury that they have nothing to do with the prior conviction, but only to determine whether the offense charged was committed by the defendant.

ID. — ROBBERY — EVIDENCE OF POSSESSION OF BURGLARS' TOOLS. — Upon the trial of a defendant accused of stage robbery, committed in Placer County, and charged with a prior conviction of burglary, it is not competent to introduce evidence that burglars' tools were found in his possession, forty-one days after the robbery, in Sacramento, it not appearing that the robbery was committed by aid of such tools, and the evidence being conflicting and wholly circumstantial as to defendant's connection with the robbery.

ID. — CIRCUMSTANTIAL EVIDENCE — INSTRUCTION AS TO PROBABILITIES. — It is erroneous to instruct the jury in a criminal case, where the evidence is circumstantial, that "when direct evidence cannot be produced, minds will act on the probabilities of the case, and that they should be governed by the superior number of probabilities on the side of the people or the defendant." (Per MCFARLAND, J.)

ID. — INSTRUCTION AS TO DEGREE OF CERTAINTY. — An instruction that, "in order to convict, the circumstantial evidence should be such as to produce nearly the same degree of certainty as that which arises from direct testimony," commented on and criticised. (Per MCFARLAND, J.)

APPEAL from a judgment of the Superior Court of Placer County, and from an order denying a new trial.

The facts are stated in the opinion.

*L. L. Chamberlain*, for Appellant.

*Attorney-General Johnson*, for Respondent.

LXXXIV. CAL.—29

BELCHER, C. C.— The defendant was convicted of the crime of robbery, and sentenced to imprisonment in the state prison for life. He appeals from the judgment, and an order denying him a new trial.

The indictment under which defendant was tried charged him with the crime of robbery, and also with a prior conviction of the crime of burglary. On being arraigned, he pleaded not guilty to the charge of robbery, and confessed the prior conviction of burglary.

When the case came on for trial, a jury was impaneled and sworn, and thereupon the court directed the clerk to read to the jury the indictment and state defendant's pleas thereto. The defendant objected to the reading of that part of the indictment which charged a prior conviction, and to the statement of his plea thereto. The court overruled the objection, and the defendant reserved an exception. The clerk then, by the direction of the court, read to the jury the whole indictment, and stated "that to the said charge of prior conviction that the defendant confessed the same, and he was guilty."

This ruling is complained of by the appellant, and we think it clearly erroneous. The code provides: " If the indictment or information be for felony, the clerk must read it, and state the plea of the defendant to the jury, and in cases where it charges a previous conviction, and the defendant has confessed the same, the clerk, in reading it, shall omit therefrom all that relates to such previous conviction." (Pen. Code, sec. 1093, subd. 1; and see *People* v. *Meyer*, 73 Cal. 548.)

It is, however, contended for respondent that the error was rendered harmless by the subsequent proceedings. The facts relied upon are these: In the progress of the trial, counsel for defendant asked one of his witnesses if he had assisted the defendant in procuring a pardon from the state prison, and the witness answered that he had. He was then asked if he had the pardon, and answered that defendant left it with him, and that he had

it in court.  On cross-examination, the witness was asked where the pardon was, "and he took it out of his pocket, and it was offered and admitted in evidence, without any objection by defendant or his counsel.  The pardon was then read without objection, and proved to be the pardon of the defendant for the very offense the prior conviction of which had been charged against him in the indictment."  And the court, of its own motion, instructed the jury as follows: "The defendant is charged with the offense of robbery, and also with a prior conviction of burglary.  Now, you have nothing to do with the prior conviction of burglary.  All you have to do is, — 1. To determine whether the alleged robbery was committed; and 2. If it was, whether the defendant committed it.  Of course, if no robbery was committed, you will acquit the defendant."

The argument is, "that the error, if any, was waived by defendant himself bringing to the attention of the jury the fact of such prior conviction," and "that the error, if any, was cured by the court's instruction to the jury."

We do not think the argument sound.  The rule is, that every error is presumed to work injury to the party against whom it is committed, unless it clearly appears from the record that no injury could have resulted from it.  This does not appear here.  The evident purpose of the provision of the code, above quoted, was to keep from the jurors all knowledge that the person on trial before them had been previously convicted of a criminal offense.  And this is based upon well-settled and familiar principles of law and right.  In the first place, it is elementary law that every one accused of crime is presumed to be innocent until proved to be guilty, and is entitled to a fair and impartial trial before an unbiased jury.  In the next place, it is well known that ordinary jurors are more ready to believe the accused guilty if it be understood by them that he has suffered a previous conviction for a similar offense.  To hold, therefore, where, as here,

the plain letter of the statute has been violated, to the manifest prejudice of the defendant, that he waived the error and is remediless, because he vainly attempted to avoid its effects by showing that he had been pardoned, would not, in our opinion, be warranted, either by law or justice. Nor was the error cured by the instructions of the court. The learned judge did not tell the jury that he had erred in allowing the charge of a previous conviction and the confession thereof to be brought to their attention, and that in determining as to defendant's guilt they should wholly discard this knowledge from their minds, but only that they had nothing to do with the prior conviction, and were only to find whether defendant was guilty of robbery or not. This left the jury to infer that the ruling complained of was proper, and that they were rightfully informed of the previous conviction, but were simply not required to make any finding in regard to it. Under such circumstances, we cannot say that the information of the prior conviction, thus wrongfully imparted to the jurors, did not exercise its baneful influence upon their minds.

It is urged for appellant that several other prejudicial errors were committed, but one of them only we think need be noticed.

The robbery charged against the defendant was committed on the eleventh day of August, 1887, near Michigan Bluff, in Placer County, and consisted in stopping a stage-driver and taking from Wells, Fargo & Co.'s express-box, which he was carrying, the sum of $265 in gold coin. The defendant was arrested for the offense on the twenty-first day of September following, at Elk Grove, in Sacramento County, and was taken thence to Sacramento City. The officer who made the arrest was a witness, and was asked by counsel for the prosecution if he searched defendant in the city prison. He answered that defendant was searched in his presence, and that certain articles were found upon him there. Counsel

then exhibited to the witness and jury a number of articles taken from the person of defendant, and " proceeded to examine said witness as to the character of said articles, and the uses to which they were supposed to be adapted." To this examination counsel for defendant objected, on the ground that the articles had no bearing on the case, and had nothing to do with the commission of the crime charged. The court overruled the objection, and the defendant duly excepted. The witness then proceeded to testify as follows:—

"There are some of these things I recognize. This bit I remember. There are two bits and a knife I remember distinctly, and the putty-knife. Those drills in the right man's or men's hands are called safe-drills, and used as such, and then they would drill most anything else. This is a putty-knife, I should presume, and a whetstone, and watch-spring. The whetstone, I presume, they would use that to sharpen a knife or tool. This, I presume, could be used for unlocking some lock,— a skeleton-key for a padlock. This would possibly be used in blowing up a safe, and this is used for picking open a window-sash. This would open a handcuff if in the right shape. I don't know whether you could use it for anything else. This is an old key, and would make a skeleton-key. This is used for sharpening tools, and it would make a saw out of that spring. That is an ordinary skeleton-key; not exactly a skeleton-key, but could be used for it. That might be used for a blow-pipe, or something of that kind, used sometimes for blowing powder into a safe."

Counsel for defendant moved the court to strike out all this testimony, on the ground that the tools exhibited and described had no connection with the offense charged, but the court denied the motion.

In *People* v. *Winters*, 29 Cal. 659, the defendant was convicted of burglary, and the only question on appeal related to the admission and exhibition as evidence to

the jury of certain burglarious tools, which were found in the defendant's carpet-bag at the time of his arrest.

It was held that burglarious tools found in the possession of the defendant soon after the commission of the offense may be offered in evidence whenever they constitute a link in the chain of circumstances which tend to connect the defendant with the commission of the particular burglary charged in the indictment. But before such tools can be received in evidence, it must be shown that the burglary charged was in fact committed, and that it was committed with the aid of burglarious tools like those proposed to be shown in evidence, and that the defendant was in the vicinity at or about the time the offense was committed. And if it appears that the burglary was not committed by means of burglarious tools, as where the burglar entered by an open door or window, the possession of burglarious tools cannot be shown.

The defendant here appears to have been convicted upon evidence wholly circumstantial. James Murray was called as a witness for the prosecution, and testified: "I was the driver of the stage running between Michigan Bluff and Forest Hill on the morning of August 11, 1887. I was stopped by a man, after going fifteen or twenty minutes, at a tree near the ditch, about 4:30, A. M. The man had a gun, and had something over his face that looked like barley-sacks. Did not notice his feet. I was not much excited. I thought at the time I recognized the man by his voice as Steve Robinson, of Michigan Bluff, as I had been acquainted with Steve Robinson several years, and knew him well. I made a statement to the justice of the peace at Michigan Bluff, and made affidavit that it was correct; that Steve Robinson was the man that stopped and robbed the stage August 11, 1887; also swore at the preliminary examination that Robinson was the man. The only occupants of the stage were a Chinaman and myself."

Now, how the articles found on defendant in Sacramento, forty-one days after the robbery was committed, can be said to constitute a link in the chain of circumstances which tend to connect the defendant with the commission of the robbery, is more than we can understand. It does not appear that the robbery was committed by the aid of articles like those shown in evidence, nor that defendant was in the vicinity at or about the time the offense was committed. The only evidence, so far as the record shows, as to where the defendant was at any time prior to his arrest, was on the part of the prosecution, that he was at or near Forest Hill on the 18th of August; and on the part of the defense, that he was at Grass Valley, in Nevada County, between one and two o'clock in the afternoon of August 11th, distant more than thirty miles from the place of the robbery.

We think the court erred in admitting the evidence objected to, and in refusing to strike it out after it was admitted.

We therefore advise that the judgment and order be reversed, and the cause remanded for a new trial.

FOOTE, C., and GIBSON, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are reversed, and the cause remanded for a new trial.

McFARLAND, J., concurring. —I concur in the judgment, and in the opinion of Commissioner Belcher; but I wish to add that some of the instructions given at the request of the prosecution, and not noticed in the opinion, were clearly wrong. For instance, the jury are told that "when direct evidence cannot be produced, minds will form their judgments on circumstances, and act *on the probabilities* of the case." This would probably be understood by the jury as instructing them that *their* minds must "act on probabilities" in determining the

guilt of the defendant, which would clearly be erroneous. But the instruction proceeds as follows: "As absolute certainty is seldom to be obtained in human affairs, reason requires that the jury, in forming an opinion of the truth of the facts, should be governed by the superior *number of probabilities* on the side of the people or the defendant." This is not only against the settled rule as to the amount of proof necessary to convict in criminal cases, but is against the express language of the code. (Code Civ. Proc., sec. 2061; Pen. Code, sec. 1096.)

The instruction was also given, that "in order to convict, the circumstantial evidence should be such as to produce *nearly the same degree of certainty* as that which arises from direct testimony." This, in my judgment, is a doubtful and dangerous proposition. I do not mean to say that it would be sufficient to reverse a judgment; for I am aware that somewhat similar language was held not to be erroneous in *People* v. *Cronin*, 34 Cal. 191, and in at least two subsequent cases. But the doctrine has never been satisfactory to the profession, and can be upheld only by the most stringent use of the rule of *stare decisis*. In my judgment, it had better be abandoned by prosecuting officers, for its use in the future may put just convictions in peril.