[Crim. No. 3490. Second Dist., Div. One. Nov. 19, 1941.]

THE PEOPLE, Respondent, v. LEROY JAMES JEF-
FRIES, Appellant.

Leroy James Jeffries, *in pro. per.,* for Appellant.

Earl Warren, Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Respondent.

WHITE, J.—Defendant was charged in count 1 of an amended information with the crime of grand theft and in count 2 with violating section 503 of the Vehicle Code. The amended information also charged the defendant with a prior felony conviction, which, before the commencement of the

trial, he admitted. Following trial by jury defendant was found guilty of grand theft and acquitted of the charge contained in count 2. This appeal is from the judgment and the order denying his motion for a new trial.

Stating the evidence most favorably to the prosecution, as we are required to do following a guilty verdict, we find in the record testimony that late on the night of March 5, 1941, Mr. James Sturdivant and two friends were driving in an automobile south on Flower Street in the city of Los Angeles. As they approached the intersection of Flower and Sixth Streets an Oldsmobile sedan, which Mr. Sturdivant testified was driven by the defendant, made a wide swing around the intersection and struck Mr. Sturdivant's automobile. The driver of the Oldsmobile did not stop, but proceeded north on Flower Street to Fifth Street, where he made a right turn and proceeded about a half block, where he stopped the car and stepped out onto the curb. In the meantime Mr. Sturdivant hailed a passing automobile and rode to the point where appellant had parked. As this witness came up, according to his testimony, appellant was just getting out of the Oldsmobile. Sturdivant approached the defendant and asked him what he was going to do about the damage to the former's automobile, whereupon the defendant answered that he would take care of it and inquired how much he owed Mr. Sturdivant. Defendant then inquired where the automobile was parked, and after being told the defendant said, ''Well, let's go down there,'' to which Mr. Sturdivant replied, ''All right.'' Thereupon two police officers drove up and asked who was driving the Oldsmobile, to which Mr. Sturdivant replied, ''This fellow here,'' but upon his turning round he discovered the defendant had fled. It appears from the record that the police officers had noticed the Oldsmobile at the intersection of Fifth and Flower, at which time they observed that the left front fender of the car was damaged and that the car was running on the rim, traveling at the rate of between 20 and 25 miles per hour as it turned on Fifth Street. The officers then noticed the complaining witness pursuing the Oldsmobile in another car. As the officers approached, they observed the defendant walk away, and subsequently break into a run. Officer Kleinfelt pursued him, but was unable to overtake him. In the mean-

time Mr. Sturdivant, together with the other officer, drove around in the police car to Sixth Street, where Mr. Sturdivant saw the defendant walking. The officer parked the police car, walked over to the defendant and took hold of his arm, whereupon the defendant jerked away and again started to run. He was pursued and overtaken by Mr. Sturdivant, who held him until the officer came up. The evidence further indicates that the Oldsmobile car had been stolen from a parking lot earlier that evening. The two witnesses who were with Mr. Sturdivant were unable to identify the defendant, but Mr. Sturdivant was positive in his identification, as were the police officers who observed him while he was driving at the intersection of Fifth and Flower Streets.

The defendant was the only defense witness. He testified that he had not been driving any automobile on the night in question and had not been in any accident; that he had just arrived in town and had started to walk to his brother's house in Beverly Hills, but discovered it was too far, and was on his way back to board a street car when he was arrested.

 Appellant first urges a reversal on the ground that the trial court committed prejudicial error by admitting into evidence certain testimony of a police officer as to a conversation he had with appellant. In that connection the following is disclosed by the record:

"Q. Will you tell us what was said relative to his driving the automobile? A. I asked the defendant what his story was regarding taking this Oldsmobile. He said, 'This is a bum beef.' He said, 'I don't even drive a car.' He said, 'I didn't steal this car.' I asked him how he came to break away from the police officers and run, and he stated when he saw the policemen it frightened him, and he broke away and ran from them. I asked him—I told him that the witnesses had stated that he was the driver, and he told me that he was too smart to steal an automobile, that he had just gotten in town the day before—the same day that he was picked up, and that he had did a rap in—

"MR. McPHERSON (Defendant's Counsel): Now, just a minute. I am going to object to that on the grounds it is calling for immaterial evidence and I will ask it be stricken, any of the conversation other than on this case.

"THE COURT: The motion is denied.

"A. He stated that he was too smart to steal an automobile, and that he had just arrived in town, and that he had did a rap in Huntsville, Texas, that it was a bum beef that he got into that time, and that he did three years for armed robbery, too, on a bum beef for someone else, and that he had did time in the county jail for burglary, and that he was too smart to steal an automobile when he first got into town. He started—

"Q. BY MR. LOUCKS (Deputy District Attorney): Is that all that you can now recall? A. Well, yes. There was some other conversation regarding who he was in trouble with in Texas, but that would not be material.

"MR. LOUCKS: That is all. You may cross-examine."

The foregoing evidence was neither competent nor material, and should not have been admitted. The attorney general contends that the testimony was admissible because the conversation contained admissions by the defendant not amounting to a confession of guilt, in which event, as in the case of a defendant who remains mute in the face of accusatory statements, such evidence is competent as tending to show guilt. However, a reading of the testimony at once indicates that instead of remaining silent or making any admissions the defendant stoutly denied his guilt and maintained his innocence throughout the entire conversation with the officer. ██ True, where evidence is relevant and material to the issue on trial, it may be admissible notwithstanding that it may incidentally disclose the guilt of a defendant of some offense other than the one for which he is on trial. But in the instant case the challenged testimony had no relevancy or materiality to the issues before the court. When the defendant denied his guilt and made no admissions, the evidence lost its probative value. ██ The testimony was clearly violative of the provisions of subdivision 1 of section 1093 of the Penal Code. The clear intention of the foregoing provision of the Penal Code is that when the defendant admits a prior conviction charged in the information, knowledge of such charge shall be withheld from the jury and no evidence concerning the same shall be admitted. Noteworthy also is the fact that section 1158 of the Penal Code provides that whenever the fact of a previous conviction of another offense is charged in an indictment or information, the jury, if they find a verdict of guilty of the offense with which he is

charged, must also, unless the defendant *admits the charge*, find whether or not he has suffered such prior conviction. From these provisions it is clear that if upon arraignment the defendant denies the prior conviction alleged in the indictment or information, that issue, as well as the issue raised by his plea of not guilty to the principal charge, must be submitted to the jury; but if upon arraignment or prior to the commencement of the trial the defendant admits the previous conviction, all information concerning a prior conviction must be withheld from the jury. ▮ It must be remembered that the object in view in charging a previous conviction is not for the purpose of evidence as to the commission of the offense upon which the defendant is to be tried, but for the information of the court in determining the punishment to be imposed in case of conviction. This is clearly shown by sections 666 and 667 of the Penal Code. In *People* v. *Sansome*, 84 Cal. 449 [24 Pac. 143], it was held that "The evident purpose of the provision of the code, above quoted," (Pen. Code, sec. 1093, subd. 1) "was to keep from the jurors all knowledge that the person on trial before them had been previously convicted of a criminal offense. And this is based upon well-settled and familiar principles of law and right."

▮ In the case now before us, the defendant having prior to his trial confessed the prior conviction or pleaded guilty thereto, there was no issue as to the prior conviction to which the testimony of the officer was applicable. It was not an admission tending to show that he had committed the offense upon which he was being tried and was wholly inadmissible as evidence tending to prove the commission of that offense, while it thwarted the very purpose of the code provision which requires the omission of all reference to the prior conviction when the defendant has admitted the same.

▮ That the admission of the evidence objected to was not only erroneous, but highly prejudicial to the defendant, cannot be denied, but such prejudice was removed when, while the defendant was testifying as a witness in his own behalf, the following questions were properly asked him pursuant to the provisions of section 2051 of the Code of Civil Procedure, and to which he gave the answers herein set forth:

"Q. You have been convicted of a felony in Texas? A. Yes. Q. That was for burglary? A. It was for robbery with firearms and burglary. I was a juvenile at the time."

In view of appellant's decision voluntarily to become a witness in his own behalf, the prosecution was justified in eliciting from him on cross-examination, by way of impeachment, that he had suffered such prior felony conviction. Such being the case, he cannot now be heard to complain of any prejudice occurring from evidence of that fact having been presented to the jury.

Appellant next urges that the verdict finding him guilty of grand theft is contrary to law, for the reason that his acquittal on the charge of violating section 503 of the Vehicle Code operated as a finding by the jury that he was not guilty of the elements necessary to constitute the crime of grand theft. Appellant asserts that the offense charged in count 2 is one necessarily included in the crime charged in count 1; that, as appellant presents the matter in his brief, "one can be guilty of the charge in count 2 (the lesser offense) without having necessarily committed the offense charged in count 1, but the converse is not true, for if one were guilty of grand theft of an automobile, he is likewise guilty of violation of 503 Vehicle Code, for the same 'felonious taking', the essential element that must be proved and is the foundation of the charge of grand theft, will support a conviction of section 503 Vehicle Code. And in the same way, if one is not guilty of violating section 503 Vehicle Code, then he could not be guilty of grand theft for both charges involve the one act and depend on the same evidence for conviction."

Appellant's contention that the verdicts in the instant case, finding him guilty of grand theft as charged in count 1 of the information and not guilty of violating section 503 of the Vehicle Code as set forth in count 2, are inconsistent, cannot be sustained. Both as to the ingredients necessary to constitute the separate offenses charged and as to the punishment provided upon conviction, the statutes are different and proscribe separate offenses. Under section 503 of the Vehicle Code, a person may be guilty thereunder if he takes an automobile though he intends only to temporarily deprive the owner of such automobile of the possession thereof, and whether the taking is "with or without intent to steal the same," whereas grand theft requires a felonious taking of the property of another. Both in substance and in form the offenses charged are distinctly different. The allegations of

the information in the instant case indicate that the district attorney was simply endeavoring to set forth the same transaction, *viz.*, the taking of a single automobile, in different ways, so as to bring the case within the provisions of either section 487 of the Penal Code or section 503 of the Vehicle Code, as the evidence on the trial might show it to have been. Section 954 of the Penal Code provides that an indictment or information ''may charge two or more different offenses connected together in their commission. . . . '' That is exactly what was done in the case before us. The offenses charged were different offenses, and the acquittal of the charge on one does not operate to absolve the defendant of guilt on the other.

As a final ground of appeal, appellant asserts that the prosecution failed to prove a felonious intent upon his part in the taking of the automobile. This claim is without merit. Although defendant testified that he at no time took or was in possession of the automobile, there was positive and creditable testimony given by two witnesses that he was driving the automobile in question. The testimony of the owner of the stolen property was that she had parked her car in an auto park and had not given appellant or any one else permission to take the same therefrom. Consequently, the triers of fact were justified in inferring and concluding that appellant took the automobile without the owner's consent and with the felonious intent to deprive such owner of her property. The intent with which an act is done is manifested by and may be inferred from, among other things, all the circumstances connected with the transaction or offense charged (Pen. Code, sec. 21), and whether there is evidence of felonious intent is for the jury to determine. It is only when the jury's determination violates the rule of reason that an appellate tribunal will substitute its conclusion for that arrived at by the ''constitutional as well as the statutory arbiter thereof.'' (*People* v. *Deininger,* 36 Cal. App. (2d) 649, 652 [98 Pac. (2d) 526].)

For the foregoing reasons, the judgment and the order appealed from are, and each is, affirmed.

York, P. J., and Doran, J., concurred.