[Crim. No. 2708.    Third Dist.    Jan. 25, 1957.]

THE PEOPLE Respondent, v. HARRISON COLE, Appellant.

THE PEOPLE, Respondent, v. FRANK LAMBERT, Appellant.

James G. Ford and Robert L. Barbour, under appointment by the District Court of Appeal, for Appellants.

Edmund G. Brown, Attorney General, Doris H. Maier and James M. Sanderson, Deputy Attorneys General, for Respondent.

PEEK, J.—By separate indictments the defendants and appellants Cole and Lambert were charged in Count I thereof with the crime of burglary and in Count II with conspiracy with the defendant O'Donnell and one Neeley, to commit burglary. Defendant Cole was also charged with five prior felony convictions and defendant Lambert with two prior convictions. The actions were consolidated for trial, and at the conclusion thereof the jury rendered verdicts finding both Cole and Lambert guilty of burglary in the second degree and of conspiracy as charged in the indictments. The motions of Cole and Lambert for a new trial were denied. A like motion of defendant O'Donnell was granted upon the insufficiency of corroboration of the testimony of the admitted accomplice Neeley. Thereafter judgments were entered pursuant to the jury verdicts against Cole and Lambert and they now appeal from said judgments and from the orders denying their motions for new trial.

The record shows that between 11 p. m. on the evening of March 12, 1956, and 7 a. m. on the morning of March 13, 1956, a window in a Red Bluff jewelry store was broken and 26 watches were removed, together with the boxes in which they were displayed. The accomplice Neeley testified that about 2 or 3 a. m. on the morning of March 13, 1956, he and the defendants Cole, Lambert and O'Donnell left Redding and drove to Red Bluff in Cole's automobile; that when they reached Red Bluff, Cole stopped the car in front of the jewelry store. O'Donnell and Lambert got out of the car. Lambert then walked to the next corner and O'Donnell walked over to the store, broke the window with a hatchet and removed some 26 watches. They then drove to a point 7 or 8 miles away from Red Bluff where they threw the boxes away and proceeded on to Neeley's apartment in Sacramento where Lambert hid the hatchet used in the burglary. From Sacramento they drove to Vallejo and Oakland, where some of the watches were pawned, and then to San Francisco.

According to police officers, on March 13 Neeley was seen to pawn or sell a woman's watch in a pawn shop on Third

Street in San Francisco. He was also seen with Lambert in the vicinity of Third and Mission Streets, and a short while later was seen in Cole's automobile. Shortly thereafter Lambert sold a watch for $6.00 in another pawn shop in the same vicinity. When accosted by an officer he gave his name as Jimmy Carter, but later admitted his true name. When he was searched a watch of the same type he had just sold was found on his person. Lambert was then taken to the police station and booked. When the other two defendants and Neeley were apprehended, Neeley and Cole were placed in the rear seat of the police car and O'Donnell was placed in front. The car was searched a short time thereafter and a watch was found under the rear seat where Cole had been sitting. After Cole's car had been impounded, it was searched by Red Bluff police officers who found fragments of glass and a price tag therein. An expert who compared the glass fragments with some from the broken jewelry store window, testified that they were identical. The tag was identified by one of the coowners of the store as having been attached to one of the stolen watches prior to the burglary. The hatchet used in the burglary was found under Neeley's bed in his Sacramento apartment. The boxes in which the stolen watches had been displayed were found a short distance from Red Bluff and were identified by one of the store owners as those taken from the jewelry store. None of the defendants testified in their own behalf, nor was any evidence offered by them.

In essence the first contention of appellants is that there was insufficient evidence of identification of the stolen watches to warrant their introduction into evidence. The watches were identified by one of the coowners of the store who testified that at the time of the theft he did not know the watch case numbers, nor did his regular business records disclose such information, but that subsequently he had received a telegram wherein the numbers were set forth and had received additional information from another source. Assuming the evidence so attacked was hearsay, nevertheless there was positive identification of the watches by the owner as being the ones stolen from the store. Such identification was amply sufficient to sustain the element of identification. The weight to be given such evidence and the credibility of the witnesses was for the jury to determine.

Appellants' next contention, that the court erred in

admitting the testimony of the accomplice Neeley, is likewise without merit. Although the record discloses that the procedure followed by the district attorney was not precisely in accordance with section 1099 of the Penal Code, we cannot say that prejudicial error resulted. The court was advised by the district attorney that there was no pending proceeding against Neeley at the time of trial; that a criminal complaint had been filed against him and the three defendants; that on motion in the justice court, the complaint had been dismissed as to Neeley and he had thereafter been held as a material witness. The record further discloses that the defendant Lambert's counsel stated to the court that it would be satisfactory so far as the defendants were concerned if Neeley was advised that the district attorney's promise to him was not binding. Thereafter the court advised Neeley that he had a constitutional right to refuse to answer any question, the answer to which might tend to incriminate him or show him to be guilty of a crime, and that such right could be waived by him. In response to the court's admonition, Neeley answered that he had been promised immunity; that he understood such a promise could be properly made only in exchange for his promise to testify truthfully; and that he understood that the enforcement of such promise depended upon the personal willingness of the district attorney and not upon a court order. A subsequent motion by Lambert's counsel to strike Neeley's testimony was denied. It is apparent from the record that the promise of immunity from prosecution upon the condition that he testify truthfully and that his rights against self-incrimination were adequately explained to Neeley by the court; that he affirmatively stated he understood; and hence, under the circumstances, the admission of his testimony cannot be held to be prejudicial error.

Appellant Cole further contends that the testimony of the accomplice Neeley was not sufficiently corroborated as to him. Under the rule expressed in *People* v. *MacEwing*, 45 Cal.2d 218, 224 [288 P.2d 257], ". . . corroborating evidence is sufficient if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the witness who must be corroborated is telling the truth." Here the record discloses evidence independent of Neeley's testimony which would establish that Cole was one of the burglars. There was the expert testimony showing that the particles of glass found in his automobile were identical with the glass from the broken window of the

jewelry store, and that the tag which was attached to one of the stolen watches was also found in his car. There was the further testimony that one of the stolen watches was found in the police car under the seat where he had sat; and finally there was the statement by Cole himself to San Francisco police officers that he had driven to San Francisco with Neeley.

Appellants' final contention relates to 12 specific items of alleged prejudicial misconduct on the part of the district attorney prior to and during the course of the trial. It would seem wholly unnecessary to summarize or discuss in detail each of these contentions. We deem it sufficient to note that such attacks by appellants fall into three general categories: (1) That the charging of the prior convictions by the district attorney was solely for the prejudicial effect it would have upon the jury; (2) that the district attorney committed prejudicial misconduct in the identification and admission into evidence of certain exhibits; and (3) that the district attorney committed prejudicial misconduct in his comments during the course of the trial and in statements made to the jury concerning the failure of the appellants to testify and the conduct of Cole's counsel.

Under the provisions of sections 969 and 969a of the Penal Code, the district attorney was under a duty to charge all prior felony convictions. The object is not, as appellants contend, necessarily for a determination of the habitual criminal status of the person charged, but also as noted in *People* v. *Jeffries*, 47 Cal.App.2d 801, 806 [119 P.2d 190], is for the information of the court in determining the punishment to be imposed in case of conviction. (Pen. Code, §§ 666 and 667.)

We find no error in the record pertaining to the admission into evidence of the designated exhibits, nor in the testimony elicited from the witnesses concerning the same. It appears that the jury was fully and fairly instructed concerning all of the items mentioned.

Lastly we find no prejudicial error in the remarks of the district attorney attacked by the appellants. While we cannot condone either his comments or his remarks, neither can we say that prejudicial error resulted. It is quite apparent from the record that the trial was both heated and acrimonious. Much of the comment of the district attorney was wholly uncalled for, but that does not mean that it was thereby

prejudicial. Furthermore, this question was fully presented and argued to the trial court on appellants' motions for new trial which were denied.

The judgments and orders are affirmed.

Van Dyke, P. J., and Schottky, J., concurred.