[Crim. No. 1941. Third Dist. Jan. 7, 1946.]

THE PEOPLE, Respondent, v. MARGUERITO ORONA, Appellant.

480

Marguerito Orona in pro. per. for Appellant.

Robert W. Kenny, Attorney General, and James O. Reavis, Deputy Attorney General, for Respondent.

THOMPSON, J.—The defendant was convicted by a jury on two counts of an information, together with two prior convictions of other felonies. The information contained three counts. The second one charged him, under section 4532 of the Penal Code, with escaping from an Industrial Farm in which he was imprisoned. On motion of the defendant, he was granted a separate trial on that charge, and it is not involved on this appeal. The first count, of which the defendant was convicted, charged him, under section 503 of the Vehicle Code, with taking and driving an automobile, without consent of the owner, with intent to deprive the owner "of his title to, *and possession of, said motor vehicle.*" The third count, on which he was convicted, charged the defendant, under section 245 of the Penal Code, with an assault upon Jean Harper, "by means of force likely to and which did produce great bodily injury." The defendant pleaded not guilty to counts one and three, and admitted the alleged prior convictions of other felonies. A motion for new trial was denied. At the trial the defendant was represented by counsel. From the judgment of conviction, and from the order denying his motion for new trial, the defendant has appealed. On appeal the defendant appears in proper person.

For grounds of reversal of the judgment the appellant contends that the court abused its discretion in failing to grant him "an opportunity to properly prepare his case for trial"; that the court erred in denying his motion to dismiss the

first count of the information after the prosecution's evidence had been closed, on the ground that there was an absence of proof that the defendant took and drove the automobile with intent to deprive the owner *"of his title"* to the vehicle, and that the court erred in refusing defendant's motion to dismiss the third count of the information, on the ground that the proof shows he did not make an assault under section 245 of the Penal Code upon Jean Harper *with a deadly weapon,* and that he was therefore guilty of no higher offense than a simple assault. It is asserted the verdicts and judgment of convictions of the first and third counts of the information are not supported by the evidence.

We are of the opinion there is no merit in this appeal. There is an abundance of evidence to support the verdicts and judgment of convictions of the first and third counts of the information. The defendant admitted the two prior convictions of other felonies as alleged in the pleading. The defendant appears to have had a fair and an impartial trial. He was represented throughout the proceedings by an attorney. At the trial he did not take the witness stand in his own behalf.

█ The defendant was granted ample time in which to prepare for his trial. He first appeared in court on May 21, 1945, at which time the court appointed an attorney to represent him, and continued the case to May 28th. On the last mentioned date he appeared with counsel and was duly arraigned. Without objection, the case was then continued for plea to June 4th. On the last mentioned date the defendant appeared in court with his attorney, and moved for continuance of the plea for another week, without giving any definite reason therefor. That motion was denied. Without objection the defendant then pleaded not guilty to the three counts of the information and he then admitted the two charges of prior convictions of other felonies, as alleged. Subsequently, on motion of the defendant, he was granted a separate trial upon count two of the information. On the last mentioned date, at his request, another attorney was associated as counsel for the defendant. Without objection, the case was then formally set for trial for June 14th. Thereafter the defendant appeared in court with his attorney and waived "his statutory time for trial" on said count two of the information, which was thereupon set for trial for June 22, 1945. The trial on counts one and three was heard on June 14th, without objection on the part of the defendant. It

does not appear that the defendant was prejudiced by lack of opportunity to prepare for his trial. No showing is made on appeal in that regard.

The defendant may not complain of the denial of his motion for extension of time to plead. He was arraigned on May 28th. His attorney was then present. Without objection the time for plea was then set for June 4th. Section 990 of the Penal Code declares that the defendant, if he requires it, shall be granted "a reasonable time, not less than one day, to answer the . . . information." He was granted seven days for that purpose. On June 4th his attorney asked for further time to plead, but assigned no specific reason therefor. That motion was denied. There was no abuse of discretion in denying further time to plead. No prejudice to appellant's defense appears or is suggested on this appeal. The court did not err in denying that motion.

The appellant contends that he was erroneously charged and convicted of feloniously taking and driving the automobile of Wood Young, without his consent, and with the intention of depriving the owner of the possession of his machine, contrary to the provisions of section 503 of the Vehicle Code. It is asserted that the offense of which the defendant was convicted amounted to no more than a misdemeanor under section 499b of the Penal Code. We are of the opinion the evidence amply supports the felonious taking of the machine contrary to said section of the Vehicle Code.

It appears without conflict that Wood Young owned the Dodge machine in question; that he lived in the Suisun Valley, near Rio Vista; that he was not acquainted with the defendant, and that he did not consent that he should take or use the car on April 26, 1945, or at any other time. The owner left his machine with Mr. and Mrs. Halloran, employees on his ranch near Rio Vista, for their temporary use. On the afternoon of April 26th, Mrs. Ethel Halloran drove to Rio Vista, about three o'clock in the afternoon of that day, to meet her daughter, Florence, who was attending the Rio Vista Grammar School. She parked the car at the curbing in front of the Mollison residence, where she was to meet her daughter. When she entered the house, she left the key in the car. She went upstairs. About four o'clock her daughter arrived from school. Recognizing their machine, and observing the defendant sitting in the car, she supposed he had come with her mother to take her home. She opened the door of the

machine and threw her coat on the seat, asking the defendant where her mother was. He replied that "she had gone." She then ran into the house, but glancing out, she saw the defendant driving away. She ran to the door and "hollered" at him, but he disappeared with the automobile.

About nine o'clock that evening the defendant drove the car to Fairfield, about 20 miles from Rio Vista. He stopped in front of the Beatty residence, where Jean Harper was taking care of the children of Mr. and Mrs. Beatty. The parents were absent for the evening. Jean was also a stranger to the defendant. When he honked the horn of the automobile, thinking it was a friend who was calling for her Jean went out to the car and he tried to persuade her to get in and ride with him, which she refused to do, and she immediately went into the house. He followed her on the false pretense that he was a friend of the Beattys and that he wanted to leave some money or a note for them. When he discovered that the owners of the home were gone he attempted to entice Jean into a bedroom, and upon her refusal to accompany him, he made a brutal attack upon her, striking her with great violence about her face, wrenching her arm and otherwise seriously injuring her. A struggle ensued between them. He finally grasped her and threw her over a piano stool. Her frantic screaming brought a neighbor to her assistance and the defendant fled, leaving the car in front of the house. The Chief of Police of Fairfield was called and he went immediately to the Beatty home where he found the machine parked in front of the house. The coat of Florence Halloran was then on the front seat. It was subsequently returned to the owner. Later that evening, Manuel Perez, who lives in Fairfield, was driving his car along the street in the neighborhood of the railroad depot. Several other boys were with him. They overtook the defendant, who was walking. He asked them for a ride. They drove over to Suisun and stopped on the main street. The defendant got out and walked away. From his conduct, the boys became suspicious of the defendant and they followed him. The defendant crawled under a building to hide. The boys informed a policeman, who arrested the defendant and took him to the county jail.

The foregoing facts satisfactorily prove that the defendant took and drove the automobile belonging to Wood Young from Rio Vista to Fairfield, without his consent, with the intent to deprive him, at least temporarily, of the possession of the

vehicle, contrary to the provisions of section 503 of the Vehicle Code. ▆ To constitute the offense prohibited by that section, it is not necessary to prove that it was the defendant's intention to steal the machine, or to permanently deprive the owner of his title thereto. The crime may be consummated when one takes and drives a vehicle, not his own, without the consent of the owner, "with intent to . . . temporarily deprive the owner thereof of his . . . *possession* of such vehicle." (*People* v. *Zervas*, 61 Cal.App.2d 381 [142 P.2d 946].) That section specifically declares such offense to be a felony whether the vehicle is so taken "with or without intent to steal the same." There is a distinction between grand *theft* of an automobile (Pen. Code, § 487) and the offense prohibited by section 503 of the Vehicle Code, as above suggested. There is also a distinction between the offenses prohibited in section 499b of the Penal Code and section 503 of the Vehicle Code. ▆ The former has been called the "Joy-ride" statute. It does not require proof of the *intent* to "*deprive* the owner" of either the "title to or *possession* of such vehicle." (*People* v. *Neal*, 40 Cal.App.2d 115, 118 [104 P.2d 555].) The misdemeanor designated by section 499b of the Penal Code may be accomplished by merely taking the machine for the temporary *use or pleasure* of the accused person for a "joy-ride." ▆ If it be assumed that the offenses, or the penalties, provided for in section 503 of the Vehicle Code and section 499b of the Penal Code, are irreconcilably conflicting, which we do not concede, then, under the well known rule of construction, the Vehicle Code provision must prevail since it was last adopted and amended. (*People* v. *Dobbins*, 73 Cal. 257 [14 P. 860] ; 59 C.J. 1101, § 649.) In the Dobbins case, *supra*, the Supreme Court said:

"It is an old and well-settled rule that when two laws upon the same subject, passed at different times, are inconsistent with each other, the one last passed must prevail."

Section 499b was first adopted in 1905. It was last amended in 1935. (Stats. 1935, p. 1337.) Section 503 of the Vehicle Code was last amended in 1939. (Stats. 1939, p. 1481.) If the two sections are deemed to be inconsistent, the latter prevails. The defendant was therefore properly convicted of the felony. (*In re Kepford*, 125 Cal.App. 675 [14 P.2d 145].)

▆ When a defendant takes and drives an automobile, without the consent of the owner, even though he afterwards abandons it, the jury is justified in assuming that he took the

car with the felonious intent to deprive the owner of its possession. The felonious intent may be established from the circumstances of the case. (*People* v. *Jeffries*, 47 Cal.App.2d 801, 808 [119 P.2d 190]; *People* v. *Deininger*, 36 Cal.App.2d 649 [98 P.2d 526].)

 With respect to defendant's conviction on the third count of the information, there is no merit in his contention that he was merely guilty of a misdemeanor instead of a felony in his assault upon Jean Harper, a young school girl. The third count of the information charged him with an assault ''by means of force likely to and which did produce great bodily injury.'' It is conceded he did not use a weapon in committing the aggravated assault upon the young girl. He did, however, beat her brutally with his fists about her face, bruising her seriously and causing injuries from which she did not recover for several days. He forced his hand into her mouth, tearing her throat. He twisted her arm, and injured her collar bone. He seized her by the neck and threw her over a piano stool. When she screamed frantically, he finally fled from the home, leaving his stolen car parked in front of the dwelling. A neighbor, Mr. Teeters, hearing her screams, came to her rescue. Doctor Gordon Bunny, a physician of Fairfield, examined her injuries the following day and confirmed the fact that she then had evidence of the violent struggle and injuries. He found that she was suffering from contusions about her face, swollen eyes, abrasions in her mouth, a stiff neck and an injured arm as the result of the beating.

The assault occurred in an effort on the part of the defendant to commit rape. It was about nine o'clock at night. Miss Harper was taking care of two young children at the home of Mr. and Mrs. Beatty, while they were absent for the evening. The defendant, having taken the car, without consent, from the street in Rio Vista, where it was parked, drove it to Fairfield, a distance of about 20 miles, and stopped in front of the Beatty residence. He honked the horn. Thinking that the horn was a summons from a friend, Miss Harper went out to the machine, in which the defendant then sat. She discovered that he was a total stranger to her. He asked her who was at home. When she replied that the owners were absent, and she returned to the house, he followed her, with the false statement that they were his friends, and that he wanted to leave some money belonging to them. He asked for

some notepaper and pretended to write them an explanation. The defendant then attempted to entice the young lady into a bedroom. She refused to go into that room, and vigorously resisted his importunities. A struggle ensued. He violently assaulted her, striking her repeatedly and forcibly with his fists about the face. He thrust his hand into her mouth and tore her throat. He wrenched her arm and injured her collar bone. He beat her unmercifully, and finally threw her over a piano stool. She was seriously injured and suffered from the beating for several days thereafter. A physician was called to treat her injuries.

Clearly the assault was perpetrated "by means of force likely to and which did produce great bodily injury," in spite of the fact that a deadly weapon was not used. In fact, the assault did result in great bodily injuries. It constituted a felonious assault under the provisions of section 245 of the Penal Code. It has been repeatedly held that an assault by means of force likely to produce great bodily injury may be accomplished although the attack is made only by use of the hands or fists. (*People* v. *Bumbaugh*, 48 Cal.App.2d 791, 797 [120 P.2d 703]; *People* v. *Kimmerle*, 90 Cal.App. 186, 189 [265 P. 525]; *People* v. *Nudo*, 38 Cal.App.2d 381 [101 P.2d 162]; *People* v. *Blake*, 129 Cal.App. 196, 205 [18 P.2d 399]; *People* v. *Hinshaw*, 194 Cal. 1, 17 [227 P. 156]; 3 Cal.Jur. 202, § 19; 6 C.J.S. 937, § 79b.) It is for the jury to determine from the manner in which the assault is made and from the circumstances of the case whether the means employed is likely to produce great bodily injury. The jury determined that issue against the defendant. The facts of this case support the finding of the jury in that respect.

For the reasons previously stated, we are satisfied the court properly denied defendant's motion for a new trial.

The judgment and the order are affirmed.

Adams, P. J., and Peek, J., concurred.