[Crim. No. 5507. Second Dist., Div. Two. Jan. 18, 1956.]

THE PEOPLE, Respondent, v. CLAYTON LEE WADE, Appellant.

John K. Sloan, Jefferson & Jefferson and Bernard S. Jefferson for Appellant.

Edmund G. Brown, Attorney General, and Edward M. Belasco, Deputy Attorney General, for Respondent.

ASHBURN, J.—Defendant appeals from judgment of conviction on two counts of violation of section 503, Vehicle Code, i.e., driving or taking a vehicle not his own, without the consent of the owner and with intent to deprive the owner of his title to or possession of such vehicle. One of the automobiles involved in the alleged asportations was a 1950 green

Ford belonging to one Charles E. Ballenger; the other was owned by Anthony B. Noyes; it was a black 1949 Ford convertible. Defendant was also charged with the theft of these automobiles but was acquitted with respect to that charge. Trial was had without a jury.

Ballenger testified that he lived at 533 West 105th Street, in the city of Los Angeles, and parked his car in front of his house at about 8:30 p. m. on April 19, 1955; that he gave no permission to anyone to take the car; the keys were not left in it but the car was gone when he wanted to use it on the 20th at 10:30 a. m.; it was recovered at Point Mugu, near Oxnard in Ventura County.

Mr. and Mrs. Anthony B. Noyes testified, and the effect of their combined testimony was to establish that the Noyes car, belonging to the husband, was parked by him near their home, 20742 Pacific Coast Highway, Malibu, at about 11 p. m. on the night of April 19, 1955; neither husband nor wife gave permission to anyone to take it; the next morning when Mr. Noyes wanted to use it at 7:30 a. m. the vehicle was gone; some unknown person had taken it; it was recovered in Downey.

This proof left two facts to be established, namely, that defendant participated in the taking and that he did so with the requisite intent. That defendant, if competently connected with the crime, had the intent to deprive the owner of the possession appears from his confessions, assuming they were voluntary; also from testimony of Police Officer Traphagen as to certain facts related to him by Barbara Lee Anderson, who was a participant in the crimes under consideration. This part of the Traphagen testimony was strictly hearsay but it was introduced without objection and thus became competent support for the conviction (*People* v. *Murray,* 135 Cal.App.2d 600, 603 [287 P.2d 775]; *People* v. *Ines,* 90 Cal.App.2d 495, 500 [203 P.2d 540]; *People* v. *Freer,* 104 Cal.App. 39, 43 [285 P. 386]).

 Traphagen said that Barbara Lee Anderson, who was taken into custody by the juvenile authorities before defendant Wade was arrested, told him that she and a "teenage boy," Michael Stump, wanted to go to Arizona and he asked her if she knew where he could get a car; she said she did not know but she thought she knew a boy who could get one, Clayton Wade; she called Wade who told her he had just gotten out of camp and did not want to go through with it because he had been paroled; "they" talked to him about it and he agreed to go along with them, showing them how

to get a car; they went to Santa Monica where he helped get a 1949 Ford and they started up the coast; Stump thought it would be easier to get a car up the coast because it would be harder to trace; when they got to Malibu they took another car, Stump got in one car and she and Wade got in the other and started up the coast; Stump ran out of gas and the three of them got in Wade's car and then they got a third one; Stump took a black convertible and she and Wade returned in a yellow car, but she did not know where Stump went; Wade dropped her off at the hospital and went to his own home in the car; in order to get the cars started Wade showed them how to wire the car, but she did not know who wired all of them. The necessary intent to deprive the owner of possession is inherent in this evidence and well nigh inescapable. That this is sufficient proof of the element of intent is established by the following cases: *People* v. *Orona*, 72 Cal.App.2d 478, 484 [164 P.2d 769]; *People* v. *Deininger*, 36 Cal.App.2d 649, 652 [98 P.2d 526]; *People* v. *Jeffries*, 47 Cal.App.2d 801, 808 [119 P.2d 190]; *People* v. *White*, 71 Cal.App.2d 524, 525 [162 P.2d 862].

Defendant made an oral confession to the police and a few days later a written one. The written one says that Barbara Lee Anderson called defendant on the night of Tuesday the 19th, told him her cousin had run away from home and gone to Norwalk to get his clothes to go to Arizona; she asked him if he could loan her a car or else take her at night out to Norwalk to get the clothes; he told her he did not have a car but would try to borrow one or get someone else to take her; he couldn't borrow or find a car or get anyone else to take her to Norwalk, so he telephoned her to that effect; she put Mike Stump on the phone and he asked about stealing a car; defendant told him it was not such a good idea but they later decided to go ahead and steal one; they met at King's Drive-In on Western Avenue and started walking the side streets looking for a 1949 or 1950 Ford, as they are about the easiest to wire; down between Vermont and Figueroa they ran into a green 1950 Ford sedan on about 108th or 109th Street, in Los Angeles; it was not locked; defendant got in and "jumped it while this Mike stood point for me"; Barbara stayed across the street on the corner; after defendant got the car started he drove it to Norwalk; when they got there Mike could not get his clothes and they returned to Los Angeles, Barbara driving part of the way and Stump part of the way, but defendant did not like his driving and at Barbara's request took the wheel himself;

they then decided to go to Santa Monica; when they got there the gas gauge showed empty so they stopped, picked up a black 1949 Ford convertible on Highway 101 outside of Santa Monica; defendant and Barbara drove it to Oxnard and Stump followed in the 1950 Ford, but he ran out of gas before they made it to Oxnard and went the rest of the way with Barbara and defendant; they rode around Oxnard and then started back to Santa Monica; on the way they picked up a yellow 1949 Ford convertible and Barbara and defendant headed for home in it while Stump headed for Arizona in the black one; but Stump was arrested in Norwalk while on his way to Arizona; Barbara came to defendant's place and took the car away on Friday morning; she called defendant on Saturday evening and told him she had "ditched the car"; defendant wired and was the first one to drive each of the cars. His written confession ends with this: "This statement and my handwriting made of my own free will, no force was used nor promises made for a lesser sentence."

Defendant testified that the confessions were not voluntary, but were extorted by threats of the officers to charge him with statutory rape of Barbara Lee Anderson, a minor, who testified that she was 15 years old. He testified that although he and Barbara both denied they had intercourse, the officers insisted that they had and told defendant that if he did not tell them what he knew about the cars they were going to pin statutory rape on him; they named Barbara as the girl; he told them they could not prove it because he had never touched her; they asserted that she had told them differently and said to defendant that if he did go up on statutory rape he would have no chance whatsoever on account of his age and the age of the girl; the judge would not listen to him; statutory rape carried a lot stiffer sentence than car theft; the rape conviction would carry a sentence of from one to 50 years, while car theft was one to five years; "that if I would cop out to car theft they would not press statutory rape"; this threat was made by Officer Nafziger in the presence of several other officers, some of whom were unknown to defendant. Defendant further testified that in fear of the rape charge and the heavy sentence he decided he "would cop to car theft" so he told the officers just about everything they had told him in regard to the cars and where they were stolen, and that he was the one that stole them. Concerning the statements repeated in the later written confession he said he was still acting under fear of prosecution

for statutory rape. This testimony concerning the means of procuring the oral confession was partially denied by one of the arresting officers, Russell M. Traphagen. Officer Thomas, who took the written confession, testified without objection that any and all statements made therein by defendant were made freely and voluntarily.

Appellant's counsel insist that a reviewing court must reexamine the evidence bearing upon the voluntary nature of the confession and make an independent determination of the matter. They cite *People* v. *Jones*, 24 Cal.2d 601 [150 P.2d 801], and quote from page 608 as follows: "While the weight of the evidence addressed to the circumstances surrounding the obtaining of a confession is to be determined preliminarily by the trial court, the circumstances constituting improper influences that would exclude a confession present questions of law, reviewable by an appellate court"; but this language is immediately preceded by a significant limitation: "But before a confession is admitted there must be evidence from which it is possible to determine that the confession was voluntarily made. (*People* v. *Dye, supra,* at p. 270 [119 Cal.App. 262 (6 P.2d 313)].)" ▊ Later cases make it clear that the appellate court can interfere with the trial judge's determination only when the evidence is uncontradicted and legally insufficient to show the confession to have been voluntary. ▊ *People* v. *Baldwin,* 42 Cal.2d 858, 867 [270 P.2d 1028]: "But due process does require that this reviewing court go behind the verdict to the extent of making our own determination as to whether the confessions were coerced. In making this determination we do not weigh the evidence as a trier of fact. Rather, we accept as true that portion of the evidence of coercion which is uncontradicted. (*People* v. *Millum* (1954), *ante,* [42 Cal.2d] pp. 524, 527 [267 P.2d 1039], and United States Supreme Court decisions there cited.)" *People* v. *Burwell,* 44 Cal.2d 16, 30 [279 P.2d 744]: "When the question has been resolved against the defendants, the determination will not be disturbed unless it is without sufficient evidentiary support." See also *People* v. *Millum,* 42 Cal.2d 524, 527 [267 P.2d 1039]; *People* v. *Cucco,* 85 Cal.App.2d 448, 452 [193 P.2d 86].

We have made the required examination of the record and find the trial judge's ruling in this regard to be adequately supported. ▊ There are some discrepancies between details of the confession and other proof, but that goes to the weight, not the competency, of the confession. (*People* v. *Madsen,* 93 Cal.App. 711, 715 [270 P. 237]; *People*

v. *Dutro,* 75 Cal.App. 138, 142 [242 P. 84] ; *People* v. *Costello,* 87 Cal.App. 313, 318 [262 P. 75].)

■ The fact that Officer Traphagen testified that he asked defendant if he had had intercourse with Barbara and asserted positively that such was the case, although defendant and Barbara denied it, does not corroborate the making of threats, as counsel claim. The same witness testified that he made no threat of prosecution for statutory rape and that he did not discuss the relative penalties for car theft and rape. The circumstances were such that the question of statutory rape was a proper one for police inquiry, and the fact that they were pursuing that investigation and trying to get admissions does not spell threats such as detailed in defendant's testimony. True, defendant named Officers Shanton and Nafziger as two of those who allegedly threatened him and thereby obtained the oral confession, and they were not called as witnesses, Officer Traphagen being called instead. ■ Shanton and Nafziger should have been called, as the burden of proof was upon the prosecution, but failure to present them as witnesses does not supply affirmative evidence corroborative of defendant's story (20 Am.Jur., § 193, p. 195; 70 A.L.R. 1326 Ann.). Appellant also asserts that the testimony of Officer Thomas supported his own testimony, but the record shows there is no merit in this claim.

The court was not bound to believe defendant, who admitted on the witness stand that he had been convicted of burglary in the preceding December and who thus was impeached. Moreover, he testified to an alibi which the court found to be untrue. These and other circumstances justified the court in rejecting defendant's testimony and in finding as it did that the confessions were voluntary and were true. Defendant was connected with the crime by testimony and circumstances other than the confessions, and they, being voluntary, supplied all the necessary additional proof.

Defendant also relied upon an alibi. That claim was supported by his own testimony and that of his wife, father and stepmother, all of whom resided in the same house. The trial judge, with ample justification in the record, disbelieved their stories and that ends the matter of alibi. Appellant also complains of certain rulings upon evidence, but his contentions in that regard are manifestly unsound and deserve no further comment.

The judgment is affirmed.

Moore, P. J., and Fox, J., concurred.