[Crim. No. 6720.   Second Dist., Div. Three.   June 1, 1960.]

THE PEOPLE, Respondent, v. NEIL GLASS et al.,
Appellants.

550

Donald E. Feeley for Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Marvin L. Part, Deputy Attorney General, for Respondent.

SHINN, P. J.—Neil Glass and Glenn Glass were charged by information with three offenses of grand theft of trust deeds and three of recording a false instrument. Trial was had upon Counts III and V alleging grand theft. The matter was submitted on the transcript of the preliminary hearing, each side reserving the right to introduce additional evidence, and it was stipulated that the evidence at the preliminary relating to the other counts might be considered on Counts III and V. No further evidence was received. Defendants were found guilty of the two offenses of grand theft. Probation was granted to Glenn Glass on condition that he serve one year in the county jail and Neil Glass was sentenced to state prison. They appeal from the judgments.

There was evidence of the following facts. Pilgrim Construction Company, a corporation, was engaged in the business of constructing homes. Puritan Savings of Whittier, a corporation, was engaged in the real estate investment business. Marlin Service Company, a corporation, acted as trustee under deeds of trust. Defendants are brothers. During 1955 and 1956, Neil Glass was president of the three corporations. Glenn Glass was secretary of Pilgrim in 1955, in 1955 and

1956 was vice-president of Marlin, and in 1956 was secretary of Puritan. William H. Harnach was secretary of Marlin in 1956 and in 1955 was secretary of Puritan.

Alexander Moshansky was the complaining witness on Count III. In May, 1956, Puritan for a consideration of $6,000 sold and assigned to Moshansky and his wife a note for that amount and a deed of trust on real property executed by Pilgrim in favor of Puritan with Marlin as trustee. The trust deed bore the signatures of Neil Glass as president and Harnach as secretary and the assignment bore the signatures of defendants as president and secretary of Puritan. The instruments were recorded in June. August 28, 1956, Neil Glass and Harnach as secretary executed on behalf of Marlin, the trustee, a full reconveyance of the property, which was recorded September 4th. This was done without authorization by Moshansky, who had received no payments on the principal of his trust deed note. In December, 1956, Moshansky agreed to a reconveyance of the trust deeded property and to accept a trust deed on another parcel in exchange. After signing a request for reconveyance in January, 1957, he learned that the property had already been reconveyed by the trustee without his knowledge.

J. Roy Smetz was the complaining witness on Count V. The Smetz transaction involved the same parcel as the Moshansky transaction. In November, 1955, Smetz purchased from Puritan at a $250 discount Pilgrim's $5,000 promissory note due in April, 1956, and Puritan assigned to him the note and a deed of trust executed by Pilgrim in favor of Puritan with Marlin as trustee. The trust deed and the assignment bore the signatures of Neil Glass as president and Harnach as secretary, respectively, of Pilgrim and Puritan. Payment of the note was extended for 6 months. The trust deed and assignment were recorded August 28, 1956. April 10, 1957, defendants executed on behalf of Marlin, the trustee, a full reconveyance of the property and the same was recorded April 16th. Smetz had received no payment on the principal of the note and had not authorized the reconveyance.

Miriam Johannes testified to a similar transaction with defendants' companies. In August, 1955, Miss Johannes and her sister paid $4,500 to Pilgrim for an assignment of Pilgrim's note to Puritan and a deed of trust on a different parcel; Marlin was again the trustee. Neil as president and Glenn as secretary of Pilgrim signed the trust deed, which was duly recorded. In October, 1956, Miss Johannes authorized a re-

conveyance of the property when Marlin should hold $4,500 for her account. But defendants had already, on June 7th, executed a reconveyance of the property as president and vice-president, respectively, of Marlin and had recorded the reconveyance four days later, without a request for reconveyance from Miss Johannes, who received no money.

Evidence was also received of the admissions of Neil Glass. In October, 1957, he went to the Hall of Justice and informed Frank C. Alward, an investigator for the district attorney's office, that he wanted to give himself up. He admitted to a deputy district attorney in Alward's presence that he had defrauded various people of about $300,000. At the time of Neil's arrest some months later, Alward asked him whether the Moshansky and Smetz trust deeds had been satisfied and whether either beneficiary had authorized a reconveyance of his property and in each instance the reply was in the negative.

It is first contended on behalf of Glenn Glass that the evidence was insufficient to support his conviction on Count III. The point is well taken. There was no evidence establishing his guilt of theft from Moshansky. Glenn's signature appears on the assignment of the deed of trust but he did not sign the reconveyance which divested Moshansky of an interest in the property. There was ground for strong suspicion but no evidence that he had knowledge of that transaction.

It is next contended that the evidence was also insufficient to support the conviction of Glenn Glass on Count V and of Neil Glass on Counts III and V. We are unable to agree with either contention. Defendants argue that because the trust deeds were not taken from the possession of Smetz and Moshansky no offense was committed and the judgments cannot be sustained under any conceivable theory of guilt. The argument is without merit.

Theft is characterized as the felonious taking of property which is not one's own. (Pen. Code, § 484; *People* v. *Moorhead*, 104 Cal.App.2d 688 [232 P.2d 268].) Embezzlement is the *fraudulent misappropriation of property by a person to whom it is entrusted.* (Pen. Code, § 503.) The statute defining embezzlement applies to trustees. (Pen. Code, § 506.) Marlin was trustee under the Smetz and Moshansky deeds of trust and defendants were officers of Marlin. Defendants were likewise officers of Pilgrim, the trustor, and of Puritan, the beneficiary. In each transaction, title to the parcel was conveyed to the trustee to hold as security for the payment of a loan.

Marlin was to hold title until the loans were paid and could not lawfully use the trust property for its own benefit. (Civ. Code, § 2229.) Nor could it reconvey the property without authorization of the beneficiary. Of course, the trust deeds were merely pieces of paper without intrinsic value, but as long as they remained of record, they represented a security interest in the real property. (*Estate of Moore,* 135 Cal.App. 2d 122, 131-132 [286 P.2d 939]; *People* v. *Roland,* 134 Cal. App. 675 [26 P.2d 517].) When the parcel was twice reconveyed without satisfaction of either debt the value of the security held for the benefit of Smetz and of Moshansky was destroyed. In the Smetz transaction both Neil and Glenn, and in the Moshansky transaction, Neil and Harnach caused Marlin to violate its duties as trustee by destroying the security of the respective beneficiaries. Marlin could not lawfully execute a reconveyance of the property without a request from the beneficiary, which it did not have, nor even a promise of authorization for either reconveyance.

Defendants argue that there was no theft because Moshansky and Smetz retained possession of the notes and trust deeds; there were no false pretenses used to obtain the trust deeds and there was no embezzlement because Marlin never had possession of the trust deeds. Their conclusion is that there was no proof of grand theft and that no crime was committed. Of course it was not mere pieces of paper that the victims lost. When one holds a recorded trust deed upon property he holds not only a document but a lien upon the property. Loss of the document does not destroy the lien but when the lien is lost by a reconveyance he has nothing left, even though the paper remains in his hands.

Defendants, who were indistinguishable from the corporation in the transaction, took from the beneficiaries their real estate security. If Marlin had held bonds as security and had handed them over to defendants with fraudulent intent the crime of embezzlement, a type of grand theft, would have been committed. The legal effect of the unauthorized reconveyances was the same. In causing Marlin to execute the reconveyances defendants were guilty of embezzlement of the property interests which were evidenced by the trust deeds. It is unnecessary to determine whether the acts of the defendants also constituted the crime of grand theft by larceny.

We think there was ample evidence of criminal intent on the part of defendants in the Smetz transaction and on the part of defendant Neil Glass in the Moshansky transaction. The

unauthorized reconveyance of Moshansky's interest in the property enabled defendants to sell another trust deed on the same property. The same was true with respect to the reconveyance under the Smetz trust deed. As a result of the two transactions in which defendants, as trustees, manipulated the obligations of their own companies, the complaining witnesses were deprived of their security with nothing having been paid upon the principal of either.

For some unexplained reason, the trust deed and the assignment of the same which were sold to Smetz in November, 1955, were not recorded until August 28, 1956. In the meantime, in June, 1956, a note and trust deed on the same property were sold to Moshansky. Thus the failure to place the Smetz trust deed and assignment of record enabled defendants to encumber the property with another trust deed and sell it to Moshansky. It was not shown what event induced the long-delayed recordation of the Smetz trust deed and assignment on August 28, 1956. However, since the Moshansky trust deed was outstanding it was necessary to clear it from the title in order that Smetz have security, hence the reconveyance contemporaneously with recordation of the Smetz trust deed and assignment. If that transaction had been with the consent of Moshansky no offense would have been committed. But it was done surreptitiously and without legal right. To be sure Moshansky was contacted some four months later and was prevailed upon to accept another note and trust deed for the ones which he held and which he believed to be valid security on the property. In January, 1957, he surrendered his note and trust deed in exchange for others, but his security had been stolen in the meantime. There was no evidence of any agreement with Moshansky prior to December, 1956, that he would exchange his trust deed for another one. The theft occurred in August and the crime could not be undone by making amends the following January. (Pen. Code, § 513; *People* v. *Royce*, 106 Cal. 173, 188-189 [37 P. 630, 39 P. 524]; *People* v. *Baker*, 64 Cal.App. 336 [221 P. 654].)

■ When one person takes the property of another unlawfully and surreptitiously, his actions speak for themselves and in the absence of satisfactory explanation his intentions must be deemed to have been as evil as his conduct was wrongful.

■ During the trial the defendants' attorney stated that defendants had conducted their operations upon a large scale. No attempt is made in the briefs to explain Neil's voluntary

statement that he had defrauded people of approximately $300,000. Defendants had an opportunity to explain their actions and justify their conduct but they chose not to do so. They cannot complain that the court concluded that they could not justify their actions. (*People* v. *Ashley*, 42 Cal.2d 246 [267 P.2d 271].)

It is finally contended that the court erred in restricting cross-examination of Smetz, Moshansky and Miss Johannes at the preliminary hearing. The court sustained objections of the prosecutor to nearly 30 questions regarding the application of payments which they had received from defendants on account of other notes the witnesses had held. Defendants argue that if the witnesses had been permitted to answer, it might possibly have developed from their answers that some payments had been misapplied and should have been credited to the notes in question. Each witness testified specifically to having received no payment on the principal of any of the obligations in question and to having authorized no reconveyance.

We have examined all the rulings and find no error. The questioning was at random and as far as we can discover was irrelevant to any issue in the case. It had to do generally with other transactions between the witnesses and the defendants and to any payments that had been received and how they might have been applied. At no time was any statement made as to any fact that might be elicited by further cross-examination. It was not even suggested that any part of the principal of the Johannes, Smetz or Moshansky notes had been paid; upon the contrary, defendants' attorney stated that he had no knowledge or information on the subject. However, he was permitted to question each witness whether any payments had been made on account of principal and invariably received negative answers. In view of this fact it is doubtful whether the hearing was not unduly lengthened by the numerous objections and arguments. There was no undue restriction of the cross-examination.

As to Neil Glass, the judgment is affirmed; as to Glenn Glass, the judgment on Count III is reversed and on Count V it is affirmed.

Vallée, J., and Ford, J., concurred.

A petition for a rehearing was denied June 28, 1960, and appellants' petition for a hearing by the Supreme Court was denied July 27, 1960.